**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Hector J.M.,                                          No. 26-cv-2945 (KMM/EMB)

      Petitioner,

v.                                                             **ORDER**

Todd Blanche, et al.,

      Respondents.

---

Petitioner Hector J.M. ("Petitioner" or "Mr. JM") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on June 13, 2026. Pet. (Dkt. 1). Petitioner asserts that his detention by immigration authorities is unlawful for two reasons: (1) detaining him without a hearing where he has the opportunity to challenge the legality of his custody violates his due process rights; and (2) his warrantless arrest violates his rights under the Fourth Amendment and applicable statutes and regulations.[1] Respondents filed an opposition to the petition on June 22, 2026. Resp. (Dkt. 5). Petitioner filed a reply in support of the petition on June 29, 2026. Reply (Dkt. 8). For the reasons that follow, the petition is granted and Respondents are ordered to release Mr. JM from custody without delay.

---

[1] The petition asserts these claims across five separate counts, but in essence, Petitioner raises two substantive challenges to the legality of his detention.

## BACKGROUND

Petitioner is a native and citizen of Mexico. In 2021, he entered the United States without inspection and did not encounter immigration agents, border patrol, or any other federal officials at that time. Mr. JM is married to a U.S. citizen who is pregnant with a U.S. citizen child that was due to be delivered in July 2026.

On June 11, 2026, Respondents took Petitioner into custody in Bemidji, Minnesota. Petitioner alleges that when he was arrested, immigration authorities did not provide any warrant, and he neither disobeyed any officer commands, nor attempted to flee. Following his arrest, Mr. JM was transferred to Kandiyohi County Jail, where he has been detained since. According to a written narrative report of the events leading up to Mr. JM's arrest, agents with Immigration and Customs Enforcement ("ICE") encountered him "while conducting a Targeted Enforcement Operation in Bemidji[.]" (Dkt. 6-2 at 2.) The agents "identified a work site with multiple subjects believed to be residing and working in the United States illegally," and as they surveilled the site, "the subjects scattered and ran, including [Petitioner]." (*Id.*) Other members of Petitioner's family were arrested at the same time and under the same circumstances.[2]

Respondents have submitted two Form I-200 warrants used in the arrest of Mr. JM, one dated June 11, 2026 and served on Petitioner on June 12, 2026 at Fort Snelling (Dkt.

---

[2] Two of Petitioner's family members also filed habeas petitions, and other Courts in this District have recently granted those petitions. *Carlos J.M. v. Blanche*, No. 26-cv-02943 (ECT/DTS), 2026 WL 2168878 (D. Minn. July 20, 2026), *R&R adopted*, 2026 WL 2170790 (D. Minn. July 28, 2026); *Felix Alberto J.M. v. Blanche*, No. 26-cv-02944 (LMP/DLM), 2026 WL 1906596 (D. Minn. July 2, 2026).

6-1 at 1) and a second dated June 11 and served the same day in Bemidji (Dkt. 6-1 at 2). Respondents also include   a Department of Homeland Security Form I-862 Notice to Appear dated June 12, 2026, which orders Mr. JM to appear before an immigration judge at Fort Snelling on June 23, 2026 for removal proceedings. (Dkt. 6-3.) However, as of June 29, 2026, a search for Mr. JM's case information in the immigration authorities' automated case information system indicated that there was no case pending for Mr. JM. (Dkt. 7; Dkt. 7-1.)

## DISCUSSION

A writ of habeas corpus may be granted to any person who shows that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). The right to challenge the legality of a person's confinement through a habeas petition "extends to … immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020). The petitioner has the burden to prove that his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

As explained below, the Court grants Mr. JM's petition and requires Respondents to release him without delay. In part, Mr. JM claims that he is entitled to immediate release because the ICE agents who arrested him did not comply with federal law governing warrantless immigration arrests. Pet. ¶¶ 71–80. Respondents assert that he is not entitled to such relief because his arrest complied with statutory requirements and raises no Fourth Amendment concerns. Further, they argue that even if his arrest was defective, release is not an appropriate remedy. Resp. at 18–23.

The parties agree that Mr. JM's arrest must be analyzed according to the requirements of 8 U.S.C. § 1357.[3] In relevant part, § 1357 allows federal law enforcement officers to make a warrantless arrest of a noncitizen if they have "reason to believe the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest." *Id.* § 1357(a)(2). The "reason to believe" standard is synonymous with constitutionally required probable cause. *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). Here, Respondents' have failed to demonstrate that agents had probable cause that Petitioner was unlawfully present in the United States.[4]

With respect to the first of the two prongs of § 1357(a)(2)'s warrantless arrest authority, Judge Laura M. Provinzino recently explained in *Felix Alberto J.M. v. Blanche* what is required :

> The probable-cause standard is "incapable of precise definition or quantification into percentages," but it nonetheless boils down to possessing a "reasonable ground for belief of guilt." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citation omitted). Probable cause must be "particularized with respect to the person to be searched or seized." *Id.* This means that ICE needed to have reasonable grounds to believe that [*Hector JM*] was here without lawful immigration status.

---

[3] Respondents concede that Petitioner's arrest cannot be justified based on the issuance of the Form I-200 warrant because it was issued before any notice to appear was filed. Consequently, they agree that his arrest must be judged by the standards of 8 U.S.C. § 1357 and applicable regulations. Resp. at 19.

[4] In response to the petition, Respondents insisted that no evidentiary hearing was needed in this case and it could prevail based on the record presented. (Dkt. 5 at 28.) Having eschewed the need for an evidentiary hearing, Respondents "must live with the consequences of that decision." *Carlos J.M.*, 2026 WL 2168878, at *2 n.2; *see Felix J.M.*, 2026 WL 1906596, at *4 n.6 (similar).

No. 26-cv-02944 (LMP/DLM), 2026 WL 1906596, at *2 (D. Minn. July 2, 2026). And here, just as in *Felix J.M.*, "there are no 'particularized' facts in the record demonstrating that ICE agents believed [Hector JM] to be in the country without lawful immigration status." *Id.*

In this case, the government's basis for claiming that there was probable cause to believe Petitioner was unlawfully in the United States is essentially identical to the evidentiary record submitted by the government in *Felix J.M.*[5] All that the record contains about the circumstances of Petitioner's arrest is found in a single paragraph in an unsworn, undetailed narrative report in the Form I-213:

> On June 11, 2026, ERO St. Paul officers encountered [Petitioner] while conducting a Targeted Enforcement Operation in Bemidji, Minnesota. Officers identified a work site with multiple subjects believed to be residing and working in the United States illegally. While Officers were conducting surveillance in the area, the subjects scattered and ran, including [Petitioner]. Officers chased down and apprehended [Petitioner] and the remainder of the subjects. Officers served [Petitioner] the I-200 and Officer Smith transported [him] to the Kandiyohi County Jail for a direct ICE book.

(Dkt. 6-2 at 2.) This is not sufficient to demonstrate that the agents had a sufficiently particularized basis to believe that Mr. JM was unlawfully present in the United States. Indeed, "[i]t would be obvious to any criminal law practitioner that this paltry paragraph falls far short of what would be expected in a probable cause affidavit for an arrest warrant."

---

[5] *Compare Felix J.M.*, No. 26-cv-2944, Dkt. 6-1 at 2 (describing arrest of Felix J.M.), *with Hector J.M*, No. 26-cv-2945, Dkt. 6-2 at 2 (identical description of Hector JM's arrest).

*Felix J.M.*, 2026 WL 2026 WL 1906596, at *2 n.5 (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). "It bears repeating that the quantum of proof for a warrantless arrest in the criminal and immigration context is the same: probable cause." *Id.* (citing *Quintana*, 623 F.3d at 1239). The record fails to establish that the arresting ICE agents had probable cause of unlawful presence to support a warrantless arrest under § 1357(a)(2).

Nevertheless, Respondents suggest that they had enough to create a "reasonable suspicion to detain and interrogate Petitioner, and probable cause to ultimately arrest him." Resp. at 20. Thus, Respondents contend that what occurred on June 11 was a brief *Terry*[6] stop, during which the arresting ICE agents learned information that supported probable cause for the warrantless arrest. *Id.* at 19–20. Again, however, the record does not support Respondents' theory.

Just as in *Felix JM*, the government's showing on this point is "dismally vague[.]" 2026 WL 1906596, at *4. All the government says here is that the agents "chased down and apprehended" Mr. JM and then "served" him with a Form I-200 at some unidentified point after he was apprehended. (Dkt. 6-2 at 2.) This was the same justification offered by the government in *Felix JM* and found by Judge Provinzino to be insufficient. 2026 WL 1906596, at *4. Nothing in this record, including the Form I-200, suggests that any questioning of Mr. JM occurred during a brief *Terry* stop, and the I-200 warrant suggests that any questioning that did occur took place after Mr. JM had already been subject to a full arrest. *Id.* at *4 n.7 ("[T]he record provides no indication about how, or when, any

---

[6] *Terry v. Ohio*, 392 U.S. 1 (1968).

statements by Felix were made, including if they were made after Felix was already placed under arrest. In fact, the only evidence of a statement made by Felix conceding that he was not a citizen is documented on June 12, 2026—one day after his arrest."). Accordingly, for the same reasons that the *Felix J.M.* court concluded that the petitioner was arrested without probable cause and not subjected to a brief investigatory stop based on reasonable suspicion, this Court reaches the same conclusion in this case. *See id.* (concluding that an "ordinary English speaker reading ICE's account of 'apprehending' [the petitioner] would therefore understand that officers were detaining him in a more conclusive way than a mere investigatory stop" and finding that "the Government's account does not indicate that ICE officers asked Felix any questions when they approached him"); *see also id.* ("Because ICE's purpose in 'apprehending' [the petitioner] was to take him into custody—not merely to investigate suspected wrongdoing—the Court concludes that [the petitioner] was arrested, not subjected to a *Terry* stop.").[7]

Finally, the Court rejects Respondents' argument that release is not an appropriate remedy for the same reasons the Court discussed in *Emily Andreina N.V. v. Blanche*, No. 26-cv-2570 (KMM/EMB), 2026 WL 2209844, at *4–5 (D. Minn. July 31, 2026). And

---

[7] For the same reasons discussed in *Felix J.M.*, this Court also finds that Mr. JM's alleged flight during the events leading up to his arrest does not change the outcome. In essence, because the record does not support a conclusion that ICE agents conducted a valid *Terry* stop at all, but instead immediately subjected Mr. JM to a full-blown arrest, even if his alleged flight could have created a reasonable articulable suspicion of unlawful presence, it was not enough to justify an arrest that requires probable cause. *See Felix J.M.*, 2026 WL 1906596, at *3–5.

because the Court concludes that the habeas petition be granted based on the unlawful

arrest claim, the Court does not consider the petition's remaining claims.

## ORDER

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. The Verified Petition for Writ of Habeas Corpus (Dkt. 1) is **GRANTED** as stated in this Order.

2. Respondents are **ORDERED** to immediately release Petitioner at a time and place communicated in advance to counsel and with all his possessions.

   **Let Judgment be entered accordingly**.

Date: August 5, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge